**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**LARRY N. JENKINS, JR.**                                                         **PETITIONER**

**V.**                       **NO. 4:14CV81-DMB-JMV**

**EARNEST LEE and ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI**              **RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

Petitioner, Larry N. Jenkins, Jr., inmate no. 42769, who is currently confined at the Mississippi State Penitentiary, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he seeks to challenge his State court convictions and sentences for fondling and sexual battery. Having considered the parties' filings and the applicable law, the Court finds that federal habeas relief is not warranted, and that this action should be dismissed.

**I
History**

Larry Jenkins was indicted on three counts of fondling and two counts of sexual battery for crimes alleged to have occurred on occasions between September 19, 2008, and February 22, 2009. The victim in each count was his sixteen year-old daughter, "Bonnie," who, along with her mother, "Judy," testified against Jenkins at trial.[1] Jenkins was subsequently convicted of two counts of fondling (Counts I and IV) and two counts of sexual battery (Counts II and V) in the Circuit Court of Bolivar County, Mississippi. He was sentenced as an habitual offender to serve fifteen years each on Counts I and IV and thirty years each on Counts II and V, with the sentences to be consecutively

---

[1] The Court retains the fictitious names used by the Mississippi Court of Appeals for the minor victim and her family members. *See Jenkins v. State*, 101 So. 3d 161 (Miss. Ct. App. 2012). The Court also notes that Judy was, at the time of the charged offenses, Jenkins' wife.

served in the custody of the Mississippi Department of Corrections.[2] Jenkins appealed his convictions and sentences to the Mississippi Supreme Court, which assigned the case to the Mississippi Court of Appeals. Jenkins, through counsel, raised the following grounds for relief:

> I. Jenkins's indictment for fondling did not put him on adequate notice as required by law, thus violating his right to due process.
>
> II. Jenkins's conviction(s) for fondling merge with his conviction(s) for sexual battery and therefore, violates his rights under the double jeopardy clause of the United States Constitution.
>
> III. Trial counsel's ineffectiveness deprived Jenkins of his constitutionally mandated right to a fair trial.
>
>> A. Introduction of prior convictions.
>
> IV. The trial court erred when it overruled Jenkins's motion for J.N.O.V. because the State's evidence was insufficient to support a conviction for sexual battery.
>
> V. The trial court erred when it failed to grant Appellant his motion for a new trial on the grounds that overwhelming weight of the evidence did not support the verdict.

On direct appeal, Jenkins' convictions and sentences for fondling on Counts I and IV and sexual battery on Count V were affirmed, but his conviction and sentence for sexual battery on Count II was reversed and rendered. *Jenkins v. State*, 101 So. 3d 161 (Miss. Ct. App. 2012), *reh'g denied*, September 4, 2012, *cert. denied*, November 15, 2012 (Cause No. 2010-KA-01156-COA). Specifically, the court held that the victim's testimony "failed to show, beyond a reasonable doubt, that there was penetration in regard to the September 19, 2008, incident." *Jenkins*, 101 So. 3d at 168. As a result of the appellate court's decision, Jenkins is currently serving consecutive sentences of fifteen years on Counts I and IV and thirty years on Count V.

Aggrieved by the appellate court's decision, Jenkins sought permission to file a motion for

---

[2]Jenkins was acquitted of one count of fondling (Count III). Doc. #10-2 at 50-52.

post-conviction relief in the trial court, raising the following grounds for relief *pro se*:

> I. Petitioner's indictment for fondling did not put him on adequate notice required by law, thus violating his right to due process.
>
> II. Trial counsel's ineffectiveness deprived petitioner of his constitutionally mandated right to a fair trial.
>
>> A. Trial counsel was ineffective in opening the door to the introduction of Petitioner's prior convictions.
>>
>> B. Trial counsel was ineffective in failing to subpoena any witnesses on behalf of the defense.
>>
>> C. Trial counsel was ineffective because she was inadequately prepared to argue against the State's motion to admit evidence of prior bad acts.
>
> III. The trial court erred when "granting" motion to admit prior bad acts pursuant to Rule 404(b) and 405(b).
>
> IV. The trial court erred when it failed to grant Petitioner his motion for a new trial on the grounds that the overwhelming weight of the evidence did not support the verdict.

The Mississippi Supreme Court denied Jenkins' request for permission to proceed in the trial court on a post-conviction motion, holding, in part:

> Jenkins's first claim, challenging his indictment, and fourth claim, challenging the trial court's denial of a new trial, were addressed on direct appeal and are procedurally barred by the doctrine of *res judicata*. Jenkins asserts in his third claim that the trial court erred by granting evidence of prior bad acts. This issue was capable of being raised on direct appeal, and it has been waived.
>
> Jenkins also asserts that he received ineffective assistance of counsel at trial. In the first assertion, he claims trial counsel was ineffective for eliciting testimony from a State's witness about Jenkins's prior felony convictions. The issue was raised and squarely addressed on direct appeal. Therefore, it is barred by *res judicata*. As for his second assertion of ineffective assistance of counsel, Jenkins's appellate counsel did not represent him at trial. Therefore, the failure to raise the ineffective assistance of trial counsel claim on direct appeal "constitute[s] a waiver barring consideration of the issues in post-conviction proceedings." M.R.A.P. 22(b). Notwithstanding waiver, the remaining ineffective assistance of counsel claim does not pass the

3

standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Having duly considered the application for leave, we find that it should be denied.

Doc. #9-2.

On or about June 4, 2014, Jenkins, proceeding *pro se*, filed the instant federal habeas petition, raising the following grounds for relief:

> Ground One: Petitioner's indictment for fondling did not put him on adequate notice as required by law thus denying him due process.
>
> Ground Two: Trial counsel's ineffectiveness deprived petitioner of his constitutionally mandated right to a fair trial.
>
> A. Counselor failed to conduct any pretrial investigation.
>
> B. Counselor failed to subpoena even a single witness as part of a defense, even after providing a list of names to the Court receiving two motions for a continuance.
>
> C. During cross-examination, she unwittingly led the witness to disclose the criminal past of the Petitioner outside the scope of trial, and more than 10 years old.
>
> D. Counselor never once asserted the "actual innocence" of Petitioner.
>
> Ground Three: The trial court erred when it failed to grant Petitioner his motion for a new trial on the grounds that overwhelming weight of the evidence did not support the verdict.

Doc. #1.

# II
# Discussion

## A.     Grounds Two (A) and (D):  Exhaustion

In Ground Two (A), Jenkins claims that trial counsel rendered ineffective assistance in failing to conduct a pretrial investigation, and in Ground Two (D), Jenkins alleges that counsel rendered ineffective assistance by failing to assert Jenkins' actual innocence.  Respondents argue that Jenkins failed to properly exhaust his State court remedies with regard to these claims, and that they are, therefore, barred.  In his Reply to Respondents' Answer, Jenkins claims that he did present these claims in filings submitted to the Bolivar County Circuit Court and the Mississippi Supreme Court.  However, a review of these documents demonstrates that Jenkins never properly presented the claims alleged in Grounds Two (A) and (D) in the State courts.  *See* Docs. #14-1, #14-2.  Jenkins has, therefore, failed to properly exhaust these claims as is required before he may present them on federal habeas review.  *See* 28 U.S.C. § 2254(b)(1) (requiring federal habeas petitioner to first exhaust State court remedies); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (holding that, in order to meet exhaustion requirement, petitioner must present claims to state's highest court in procedurally proper manner to allow state court fair opportunity to consider and pass on claims).  Because there is no avenue by which Jenkins may now present his claims in State court in a procedurally proper manner his claims are "technically exhausted," and are, thus considered to be procedurally defaulted for purposes of federal habeas review.  *See Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

Jenkins' procedural default bars this Court's review of his defaulted claims unless he demonstrates either cause for and prejudice as a result of the default, or that failure to review the

5

claims would result in a fundamental miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds that Jenkins filed a *pro se* application for permission to proceed with a post-conviction motion, and as such, it was he who chose not to raise the issues for which he now seeks federal habeas review. Therefore, he cannot establish cause for his default. Absent a showing of cause, the Court need not consider whether there is prejudice. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Moreover, Jenkins has not established that the Court's failure to consider these claims will result in a fundamental miscarriage of justice. This exception to the procedural default rule is limited to cases of actual innocence where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation and quotation marks omitted). To establish the requisite probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 644. Jenkins has produced no such evidence. Therefore, habeas relief cannot be granted with regard to Jenkins's claims in Grounds Two (A) and (D).

**B.      Grounds One and Two (B):  Procedural Bar**

Related to the concept of procedural default is the procedural bar doctrine, which bars federal claims that were presented to the State court and disposed of on State-law grounds. *See, e.g., Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). This doctrine is relevant to the claims Jenkins presents in Grounds One and Two (B) of his federal petition.

In Ground One, Jenkins alleges that the indictment for fondling referenced only the victim's "private parts" and did not, therefore, provide him with adequate notice of his allegedly unlawful

conduct. This claim was barred on direct appeal because Jenkins failed to lodge a contemporaneous objection at trial. The Mississippi Court of Appeals held:

> Jenkins never filed any objection to the form of the indictment. Any alleged defect in the form of an indictment, which is "curable by amendment, ... is considered waived by the failure to file a demurrer to the indictment." *Frei v. State*, 934 So.2d 318, 325 (Miss.Ct.App.2006). Notwithstanding, we cannot see where the use of the term "private parts" prevented Jenkins from being fully advised and aware of the charges against him. The language in the statute actually has broader terminology than the language contained in the indictment. We find this assignment of error without merit.

*Jenkins*, 101 So. 3d at 165.

In Ground Two (B), Jenkins alleges that his trial counsel rendered ineffective assistance in failing to subpoena a single witness as part of a defense, even after counsel provided a list of names to the trial court and received two continuances. The Mississippi Supreme Court held this claim was procedurally barred on post-conviction review, noting that "Jenkins's appellate counsel did not represent him at trial. Therefore, the failure to raise the ineffective assistance of trial counsel claim on direct appeal 'constitute[s] a waiver barring consideration of the issues in post-conviction proceedings.' M.R.A.P.22(b)."[3] Doc. #9-2.

With regard to the allegations in Ground Two (B), the Court notes that "[w]hen a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). Mississippi Rule of Appellate Procedure

---

[3] Mississippi Rule of Appellate Procedure 22(b) reads: "Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings."

("M.R.A.P.") 22(b), the application of which supplied the procedural bar applied to the instant ineffective assistance of counsel claim, supplements Miss. Code Ann. § 99-39-21(1).[4] *See Kirkwood v. King*, No. 2:12cv2-MPM-DAS, 2014 WL 4055815 at *4 (N.D. Miss. August 14, 2014) (holding that M.R.A.P. 22(b) "operates in substantially the same way as Miss. Code Ann. § 99-39-21(1)."). Jenkins bears the burden of demonstrating that the procedural rule is not "strictly or regularly" followed in order to avoid application of the bar. *Stokes*, 123 F.3d at 860. Jenkins has not met this burden and these federal claims are, therefore, barred pursuant to independent and adequate State procedural rules. *Id.* (holding that § 99-39-21(1) is independent and adequate state procedural bar).

Like a prisoner seeking review of a technically exhausted claim, a prisoner seeking to obtain review of a claim barred by a State procedural rule must demonstrate either cause and actual prejudice overcoming the default, or that a "fundamental miscarriage of justice" would result from refusal to consider his claims. *See Coleman*, 501 U.S. at 750. In order to find the cause necessary to excuse the procedural bar, "there must be something **external** to the petitioner, something that cannot be fairly attributed to him." *Id*. at 753 (emphasis in original). Examples of objective factors, which have been found to constitute cause, include "interference by officials" and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McClesky v. Zant*, 499 U.S. 467, 494 (1991). In addressing cause for procedural default which may be attributed to attorney error, the United States Supreme Court has held:

> We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a

---

[4] This section reads: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver." Miss. Code Ann. § 99-39-21(1).

> defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, *supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, because Jenkins has not made an allegation in the State courts that appellate counsel was ineffective for failing to raise his challenge to trial counsel as set forth in Ground Two (B) on direct appeal, he may not rely on an allegation of attorney error to vitiate the procedural bar. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (holding that "ineffective assistance adequate to establish cause for procedural default of some *other* constitutional claim is *itself* independent constitutional claim" that must be exhausted) (emphasis in original).

Additionally, the Court finds that attorney error cannot be used to overstep the procedural bar applied to the claim in Ground One. The Court determines that counsel was not ineffective, and as the appellate court noted, the use of the phrase "private parts" in the indictment was more specific than the language contained in the statute.[5] *Jenkins*, 101 So. 3d at 165. Therefore, the Court finds that Jenkins has failed to show any external action which resulted in his procedural default and has failed to show any actual prejudice as a result of the imposition of this bar.

Neither can Jenkins demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. As was noted with regard to Grounds Two (A) and (D), in order to avail himself of the "fundamental miscarriage of justice" exception, Jenkins must show actual innocence, that "as a factual matter, [] he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995); *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). Jenkins has not asserted any new, reliable evidence which shows that it was "more likely than not that no reasonable

---

[5]The fondling statute uses the following language to put an accused on notice of the specific contact that is criminalized: "handle, touch or rub with hands or any part of his or her body or any member thereof." *See* Miss. Code Ann. § 97-5-23(2).

juror would have convicted him in the light of the new evidence." *Fairman*, 188 F.3d at 644 (citation omitted). Therefore, Jenkins cannot establish the applicability of this exception. Jenkins' claims in Grounds One and Two (B) are barred from federal habeas review.

### C. Grounds Two (C) and Three: Merits

Jenkins' allegations in Grounds Two (C) and Three were decided on their merits by the State courts. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if: (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) " the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or that identify the correct governing law, but misapply it to the case. *Id*. at 407-08. Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both "incorrect *and* unreasonable[.]" *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original) (citation omitted). A federal habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, and not the court's reasoning in reaching the decision. *Neal v. Puckett*,

10

286 F.3d 230, 246 (5th Cir. 2002).

### 1.      Ground Two (C)

Jenkins alleges that trial counsel was ineffective because during cross examination she elicited improper testimony from Judy and opened the door for the introduction of testimony regarding Jenkins' criminal history.

A claim of ineffective assistance of counsel requires the petitioner to demonstrate that counsel rendered deficient performance that prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether counsel's performance was deficient requires consideration of whether counsel's performance was objectively reasonable under prevailing professional norms. *Day v. Quarterman,* 566 F.3d 527, 536 (5th Cir. 2009). In evaluating counsel's performance, courts presume that counsel rendered reasonable professional judgment. *See id.*; *Strickland*, 466 U.S. at 690.

A petitioner can establish prejudice as a result of counsel's performance if he can show that the outcome of his trial would have been different but for counsel's alleged errors, and that "the result of the proceedings was fundamentally unfair or unreliable." *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quotation omitted). A petitioner must establish both prongs of the *Strickland* test to prevail on his claim of ineffective assistance. *See, e.g., Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998). Additionally, where a claim has been adjudicated on the merits by the state court, the question is not whether counsel's actions were reasonable, but "whether the state court's application of the *Strickland* standard was unreasonable," which is a "doubly" deferential inquiry. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Mississippi Court of Appeals considered this claim of ineffective assistance of counsel, summarizing the facts regarding the challenged cross-examination as follows:

> Jenkins claims that defense counsel's cross-examination of witnesses was inept. Jenkins notes specifically that defense counsel erroneously elicited testimony from Judy regarding Jenkins's prior felony convictions, which had been excluded from evidence. When Judy testified that Jenkins had been terminated from his volunteer position at the local school, defense counsel inquired as to why that occurred.
>
>> Q. What was the cause of that?
>>
>> A. It was because the central office and then he wasn't allowed, a complaint about him. I don't know if I should say what the complaint was.
>>
>> Q. Yes, please.
>>
>> A. That he was a convicted felon and he did not need to be around children, and, therefore, they did not allow him around back at the school.
>
> A bench discussion was held regarding the inadmissible remarks, and the circuit court issued a limiting instruction, instructing the jury to "disregard the response about a prior conviction" and to "not use that conviction as evidence in this case."
>
> Jenkins argues that the testimony about his prior convictions was "so damaging[,] it could not have been mitigated by the limiting instruction given to the jury." There is a presumption that a circuit court's limiting instruction to a jury, to disregard testimony or evidence that might be prejudicial, cures any error. *Burnside v. State*, 912 So.2d 1018, 1024 (¶ 10) (Miss. Ct. App. 2005) (citing *Smith v. State*, 530 So.2d 155, 161 (Miss. 1988)). After the circuit court presented the limiting instruction, the judge asked the jury if it could disregard the evidence, and it answered in the affirmative. Considering the quickness in which this issue was addressed at trial and corrected by the circuit judge, we presume that the limiting instruction cured any error caused by the introduction of the evidence.
>
> "There is no constitutional right to errorless counsel." *Thorson v. State*, 994 So.2d 707, 719 (¶ 31) (Miss. 2007) (citing *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991)). Even if defense counsel's eliciting of testimony regarding Jenkins's prior convictions constituted deficient performance, Jenkins has not satisfied the second prong of *Strickland* by showing this Court that there is a reasonable probability that the outcome of the trial would have been different. There was substantial testimony concerning Jenkins's sexual battery and molestation of Bonnie. Consequently, Jenkins has failed to establish any prejudice resulting from his attorney's accidental solicitation of evidence that he was a convicted felon.

*Jenkins*, 101 So. 3d at 170-71.

The Court notes that following the challenged testimony, trial counsel made it clear that she was attempting to establish that Jenkins was involved in his children's lives and was not a "deadbeat." Doc. #10-2 at 137. Prior to eliciting the challenged testimony, there had been testimony that Jenkins was not employed and was trying to qualify for social security insurance. *Id*. at 131. Respondents argue it was a valid trial strategy for counsel to attempt to show that Jenkins had been an involved father, and that trial counsel's service was not ineffective.

Jenkins' trial counsel asked a State's witness to tell the jury why Jenkins was not allowed to work at the school, and she asked the witness to elaborate on the nature of the complaint against Jenkins. *See* Doc. #10-2 at 132. The Court finds it difficult to imagine what favorable response counsel was expecting. Therefore, the Court declines to determine that eliciting this specific information was part of a valid trial strategy. However, as noted by the appellate court, Jenkins has not demonstrated prejudice as a result of this brief exchange. First, the trial judge gave the jury a limiting instruction. A jury is presumed to follow its instructions. *Weeks v. Angelone*, 528 U.S. 255, 234 (2000) (internal citation omitted). Additionally, as discussed below, ample evidence supported Jenkins' conviction. The finding that counsel was not ineffective was neither contrary to, nor an unreasonable application of, *Strickland* or its progeny. The decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, Jenkins is not entitled to federal habeas relief with regard to this claim.

## 2. Ground Three

In Ground Three, Jenkins challenges the weight of the evidence against him.[6] A claim challenging the weight of the evidence requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). The jury, not a reviewing court, bears "the responsibility … [to] fairly []resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 45 n.21 (citation omitted). Therefore, the weight of the evidence is not an issue assessed on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").[7]

> The appellate court considered this issue and found:
>
> A motion for a new trial challenges the weight of the evidence. *Beasley*, 74 So.3d at 364 (¶ 34). "Under this standard, 'we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.' " *Id.* (quoting *Bush*, 895 So.2d at 844 (¶ 18)).
>
> Jenkins argues that Bonnie concocted the allegations against him for revenge because he was a strict parent, and he contends that her actions after his indictment support this theory. He notes that after he was arrested, Bonnie quickly joined internet social networking sites, and at the time of the trial, she was pregnant with her boyfriend's child. Bonnie did acknowledge that Jenkins was a strict disciplinarian. When asked how she was disciplined, she said: "I'd have to grab my ankles[,] and I'd get hit with

---

[6] The Court notes that, on direct appeal, the court ultimately reversed and remanded with regard to Count II concerning the sufficiency of the evidence. On both direct appeal and post-conviction review, however, Jenkins has challenged only the weight of the evidence supporting his remaining convictions and sentences.

[7] A challenge to the sufficiency of the evidence may, in contrast, form a basis for federal habeas relief, because it is based upon fundamental due process concerns. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Relief may be granted based on such a challenge only when the evidence, viewed in the light most favorable to the State, is such that no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319 (quotations omitted).

a board." She noted that her sisters did not have to do that.

Judy testified that Jenkins would often only take Bonnie on errands. When she questioned Jenkins about it, he explained it was because he had not been around when Bonnie was young. Judy also observed that he occasionally made inappropriate remarks regarding Bonnie's friends:

> Well, I actually had talked to him about things that were inappropriate, such as about the girls' body. He would make comments about the various girls' breasts. That's all. He was actually saying things about [Bonnie's] friends figure ... so I did say things to him.
> …
> But just different things like about the panties or the bra strap is showing[,] and I just said that's not something you need to make, that's something her parents could handle.

Beth McCune, who had hosted the birthday party on September 19, 2008, also stated that Jenkins had made inappropriate comments regarding her two teenage daughters. She stated that she felt "uncomfortable" around Jenkins. McCune also said that Jenkins came up to her on one occasion and "pat[ted]" her, "which was pulling my pants down, because he thought I was [Bonnie]." Jenkins also poked his finger through a hole in McCune's shirt on another occasion, which she found to be odd since she "barely knew him."

Bonnie provided extensive and detailed testimony concerning Jenkins's sexual battery and molestation. As we have already discussed, Bonnie stated that Jenkins touched her breasts and put his hand inside her panties after the birthday party on September 19, 2008. Bonnie also testified that Jenkins touched her breasts on October 11, 2008, and attempted to put his hand inside her panties, but her pants were too tight for him to be able to do so. Bonnie explained that as a result, Jenkins wanted her to put on sexy shorts that he had bought her when she got home. Finally, in her testimony regarding the February 22, 2009 incident, Bonnie stated: "He placed his hand on my butt to make me push forward and then he, he put his finger in."

Bonnie also testified that Jenkins told her that before she could get a boyfriend, she "had to lose [her] virginity with [Jenkins]." When questioned on direct examination what Jenkins considered their relationship to be, Bonnie stated: "He said I was an adult, that he'd raise my daughter and think of me as a lover." She subsequently explained that Jenkins told her if she became pregnant by him, "he would help raise [the baby] 100%[.]"

Accordingly, we find that the overwhelming weight of the evidence supports the verdicts for Counts I, IV, and V.

*Jenkins*, 101 So. 3d at 170-71.

Jenkins' challenge to the weight of the evidence is not cognizable on federal habeas review. The Court nonetheless determines that the appellate court's findings are supported by the record. Therefore, this claim does not warrant federal habeas relief.

**D.     Certificate of Appealability**

Jenkins must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA on any claim rejected on its merits, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Applying these standards, the Court concludes that a COA should be denied in this case.

**III
Conclusion**

For the reasons set forth herein, Jenkins' petition for a writ of habeas corpus is **DENIED**. A certificate of appealability is also **DENIED**. A final judgment in accordance with this opinion and order will issue.

**SO ORDERED,** this 31st day of March, 2015.

                                                **/s/ Debra M. Brown**
                                                **UNITED STATES DISTRICT JUDGE**